## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

     **Plaintiff,**

**vs.**                                 **CASE NO. 4:01CR47-SPM/AK**

**WILLIE FRANCIS,**

     **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This cause is before the Court on the motion of Defendant Willie Francis to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  Doc. 118.  The Government has responded to the motion, Doc. 134, and Defendant has filed a reply. Doc. 136.  Subsequently, Defendant filed a document styled as an "Amended 2255 Motion Pursuant to Civil Rule 15," which, because of the posture of the case, the Court construed as a motion for leave to amend.  Doc. 141.  Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

## BACKGROUND

Defendant Francis was indicted in three counts of a seven-count indictment.  In Count One, he was a co-defendant with Robert Hall and Christopher Brown; in Counts Two and Five, he was a co-defendant with Brown only.  Doc. 1.  On November 7, 2001, Defendant and the Government entered into a Plea and Cooperation Agreement.  Doc. 53.  In that document, Defendant acknowledged that "absent a substantial assistance motion, the statutory provisions require a life sentence."  *Id.* at 3.  Defendant also "specifically waive[d] any Fifth Amendment privilege and any other privilege inconsistent with the cooperation required by this agreement."  *Id.*  The agreement concluded with Defendant's acknowledgment that no other agreements between the parties existed and that Defendant entered "this agreement knowingly, voluntarily, and upon advice of counsel."  *Id.* at 6.

On November 7, 2001, Defendant appeared before the magistrate judge to plead guilty to Count One.  However, during the course of the proceeding, the Court became concerned about the state of Defendant's health and continued the plea colloquy "so that Defendant's chest pains can be evaluated by a physician."  Doc. 49.  The following day, the colloquy resumed.  During the course of questioning, the magistrate judge specifically directed Defendant's attention to the Statement of Facts:

> MR WHITTINGTON:       We had one small change on the front page [of the Statement of Facts]...with the amounts that actually were possessed or brought over, delivered by [Defendant], and Mr. Simpson made that notation.

> THE JUDGE:       And you agree that the government could show at least some of the drugs given to Brown for

**No. 4:01cr47-spm/ak**

the sale, that was a 24.1 gram sale, was given to Brown by you, you agree that the government has evidence of that?

THE WITNESS:        Yes, sir.

THE JUDGE:          Can you tell me in your own words what you did that causes you to believe that you are guilty of Count 1....

THE WITNESS:        Sir, myself, I and Mr. Brown, he obtained drugs from some more individuals and when he obtained them from the other individuals, Mr. Hall, he would give me a portion of it to [sell], because he was having a relationship with my niece.

THE JUDGE:          So let me stop you there, in other words, you and Mr. Brown had a relationship where he would give you some drugs to sell and then you would go and sell them, is that right?

THE WITNESS:        Yes, sir.

THE JUDGE:          What kind of drugs were these?

THE WITNESS:        Crack cocaine.

THE JUDGE:          Did you sell more than 50 grams of the crack cocaine in the course of your relationship with Mr. Brown?

THE WITNESS:        Yes, sir.

THE JUDGE:          Are you sure of that?

THE WITNESS:        Yes, sir.

THE JUDGE:          Are you sure of that?

THE WITNESS:        Yes, sir.

**No. 4:01cr47-spm/ak**

| THE JUDGE: | Do you understand how having an agreement with Mr. Brown to sell crack cocaine like that is a conspiracy, that's what it's called in federal law, it's an agreement to do something, do you understand how that is, how that works? |
| --- | --- |
| THE WITNESS: | Now I do, sir. |

Doc. 157 at 12-13; *see also* Doc. 52.

The Court then explained the sentence which Defendant faced:

| THE JUDGE: | The maximum sentence that may be imposed upon your plea of guilty to Count 1 is a sentence of life imprisonment.  There is a plea agreement? |
| --- | --- |
| MR. WHITTINGTON: | Yes, sir, there is. |

* * *

| THE JUDGE: | We have had a pause with Mr. Whittington having a chance to talk to Mr. Francis.  Do you need more time? |
| --- | --- |
| THE WITNESS: | No, sir. |
| MR. WHITTINGTON: | When you said plea agreement, he thought maybe there had been a change and there was an actual agreement as to the sentence. |
| THE JUDGE: | No.  Let me hand over the plea agreement to you and go through that process one more time. |

* * *

| MR. WHITTINGTON: | [W]e have been through this document a few times.  I think sometimes it's still difficult for people who have been in state court frequently to understand a plea agreement isn't the same form that they are used to seeing. |
| --- | --- |

**No. 4:01cr47-spm/ak**

THE JUDGE:            That's why I'm trying to take such care, so that
                     you will understand what the differences are.

                            * * *

                     Mr. Francis, is that your signature to the plea
                     agreement?

THE WITNESS:         Yes.

THE JUDGE:           Okay.  This is the part of this process where
                     I'm supposed to tell you what the maximum
                     possible penalties are and so I'll do that now.

                     The maximum sentence that you could get for
                     a plea, guilty plea, is life imprisonment.  It's
                     also the minimum sentence.  That means the
                     only sentence that you could get as a
                     consequence of pleading guilty, unless there is
                     a substantial assistance motion, is life in
                     prison.  Do you understand that?

THE WITNESS:         Yes, sir.

THE JUDGE:           Okay.  I'll talk to you about substantial
                     assistance motions in just a minute, I
                     understand that you're counting on that.

THE WITNESS:         Yes, sir.

THE JUDGE:           But if you don't get a substantial assistance
                     motion, the hard fact is that you will get a life
                     sentence.  Do you understand that fact?

THE WITNESS:         Yes, sir.

                            * * *

THE JUDGE:           And knowing that those are the possible
                     maximum sentences, do you still wish to plead
                     guilty?

THE WITNESS:         Yes, sir.


No. 4:01cr47-spm/ak

Doc. 157 at 14-18; *see also* Doc. 53.

The Court next explained the application of the Sentencing Guidelines:

| | |
|---|---|
| THE JUDGE: | Sentencing guidelines in federal court provide that at sentencing, the judge has a report and it has a lot of characteristics, most notably though is criminal history, the amount of drugs involved, the nature of the offense, acceptance of responsibility for pleading guilty, will cause the guideline range to go up or down. |
| | Once the range is fixed and decided, then Judge Mickle within those guidelines can sentence either somewhere near the bottom or somewhere near the top and anything would be legal for him to do.  Do you understand that? |
| THE WITNESS: | Yes, sir. |
| THE JUDGE: | If there is a mandatory life sentence, then there isn't any guideline, that's the only sentence. |
| | If there is a substantial assistance motion that allows Judge Mickle to go below the guidelines or below the minimum mandatory life sentence–are you still with me? |
| THE WITNESS: | Yes, sir. |
| THE JUDGE: | –then he could sentence within the guideline range, it's within his discretion, but it's permissible at that point if there is a substantial assistance motion. |
| THE WITNESS: | Yes, sir. |
| THE COURT: | Do you understand all of that? |
| THE WITNESS: | Yes, sir. |

* * *

**No. 4:01cr47-spm/ak**

| THE JUDGE: | Do you understand that until this presentence report is completed and until all of the uncertainties of the substantial assistance motion are determined, until Judge Mickle has finally determined where he sits with regard to a guideline, that it's impossible to predict the guideline range? |

| THE WITNESS: | Yes, sir. |

| THE JUDGE: | So whatever calculation that you might have done in your head with Mr. Whittington is just a guess at this point.  Do you understand that? |

| THE WITNESS: | Yes, sir. |

| THE JUDGE: | Okay.  Do you understand that if there is no substantial assistance motion, Judge Mickle has to impose the life sentence? |

| THE WITNESS: | Yes, sir. |

*Id.* at 19-23.

The Court then reviewed selected portions of the Plea and Cooperation Agreement with Defendant and explored the voluntariness of the plea and his understanding of other critical portions of the Agreement:

| THE JUDGE: | There is a plea agreement and I have it before me and I want to go over that with you now. Have you had a chance to go over this plea agreement with Mr. Whittington? |

| THE WITNESS: | Yes, sir. |

* * *

| THE JUDGE: | Have you read it yourself? |

| THE WITNESS: | Yes, sir, I have. |

* * *

**No. 4:01cr47-spm/ak**

THE JUDGE:                    Has Mr. Whittington discussed this and
                              explained all the conditions of the plea
                              agreement to you?

THE WITNESS:                  Yes, sir, he has, sir.

THE JUDGE:                    Do you think you fully understand it and all the
                              consequences of the plea agreement?

THE WITNESS:                  Yes, sir, I understand it.

THE JUDGE:                    Has anyone made any promises of any kind to
                              you to plead guilty, other than what's in the
                              written plea agreement?

THE WITNESS:                  No, sir.

THE JUDGE:                    Are you counting on any secret promise from a
                              law enforcement agent or somebody
                              representing the government to get you to
                              plead guilty, that's not in writing in this plea
                              agreement?

THE WITNESS:                  No, sir, no one has promised me anything.

THE JUDGE:                    Has anyone used any threats or force or
                              intimidation to make you plead guilty?

THE WITNESS:                  No, sir, I haven't been.  It's being given freely.

THE JUDGE:                    Freely, okay.

                              On page 2 of this plea agreement, you
                              say that you agree that you have been
                              convicted of two or more offenses as set
                              out in the government's Information and
                              Notice of Intent to Pursue Enhanced
                              Sentences.  Let me explain what that
                              means.

                                        * * *

                              What this means is that you are
                              agreeing that the government–there are

**No. 4:01cr47-spm/ak**

two qualifying convictions in the
government's notice of intent to pursue
an enhanced sentence and that's true, you are agreeing that it's true, and the effect of
this is that if you're convicted of Count 1, then you get a minimum mandatory life
sentence.  Do you understand the consequences of this statement....

THE WITNESS:          Yes, sir.

THE JUDGE:            Is it true that you [have] been convicted of two
                      or more drug trafficking offenses in the past?

THE WITNESS:          Yes, sir.

                                    * * *

THE JUDGE:            You would have a right, if you wish, if this
                      wasn't true, you would have a right to contest
                      that if you wanted to do that and it would
                      change where we stand in this guilty plea
                      colloquy that I'm doing right now, but I hear you
                      say to me that it's true and you stick by what
                      you said in your plea agreement, is that true, is
                      it true that you are convicted of two prior drug
                      offenses?

THE WITNESS:          Yes, sir.

THE JUDGE:            You have agreed to cooperate in this case, is
                      that not right?

THE WITNESS:          Yes, sir.

THE JUDGE:            And you waive your fifth amendment right to
                      any self incrimination and give truthful
                      testimony against other people, is that correct?

                                    * * *

THE JUDGE:            Do you understand that that's what you have
                      done here?

                                    * * *

**No. 4:01cr47-spm/ak**

THE JUDGE:             Am I mistaken about the nature of this
                       agreement?

MR. WHITTINGTON:       No, sir, you're correct.

THE WITNESS:           You're not mistaken.  I ain't going to have to
                       testify on myself, is that what you're saying?

THE JUDGE:             Well, let me get to the specific–

MR. WHITTINGTON:       I think he is just confused with the language,
                       maybe you can clarify it.

THE JUDGE:             Let's go to page 3 of the agreement.  Okay,
                       now, paragraph H there says that you
                       specifically waive any fifth amendment privilege
                       against self incrimination, that's what that
                       privilege is, and any privilege inconsistent with
                       cooperation required by the agreement.  In
                       other words, you have agreed to cooperate
                       fully and truthfully and tell the United States
                       attorney–

THE WITNESS:           Yes, sir, I agree.

THE JUDGE:             –matters involving criminal activity of other
                       people?

THE WITNESS:           I agree to that.

THE JUDGE:             You agree to that?

THE WITNESS:           Yes, sir.

THE JUDGE:             In the course of that, if that causes you to
                       incriminate yourself, you have agreed to do
                       that as well, tell the whole truth and get it all on
                       paper.  Is that what you plan to do?

THE WITNESS:           Yes, sir, I agree to that.

THE JUDGE:             Does the government have any conditions to
                       that?

**No. 4:01cr47-spm/ak**

MR. SIMPSON:        No, Your Honor.  I was going to say that we
                    lawyers find ourselves trying to solve problems
                    that normal human beings don't even realize
                    exist, and there is another provision in here
                    that says as long as Mr. Francis is truthful, that
                    those things won't be used against him.

                    This specific language is in here
                    because there was a case in the 11th
                    Circuit...where somebody agreed to
                    cooperate and then when called to the
                    witness stand, said I take the fifth, and
                    this is the way of insuring we don't get in
                    that position.  As long as Mr. Francis is
                    truthful, his statements, subsequent to
                    the agreement...then he is not
                    increasing his guidelines or otherwise
                    impairing himself.

THE JUDGE:          I learn something new everyday and I
                    appreciate your continuing education of me.

                    I can see what your concern is and Mr.
                    Simpson has clarified it, and as he said, if you
                    give truthful evidence as to anything the
                    government wants to know, the things which
                    are against you, won't be used against you.

THE WITNESS:        Yes, sir.

THE JUDGE:          Do you understand that fact?

THE WITNESS:        Yes, sir.

THE JUDGE:          Do you understand that if you refuse to
                    cooperate as you promised, then the
                    government can treat the agreement as being
                    revoked?

THE WITNESS:        Yes, sir, I understand.

THE JUDGE:          And you are still stuck with your guilty plea.  Do
                    you understand that?

**No. 4:01cr47-spm/ak**

THE WITNESS:             Yes, sir.

THE JUDGE:               At that point, the government can refile
                         dismissed charges and otherwise proceed and
                         all the information that they got from you, they
                         can use against you.  Do you understand that?

THE WITNESS:             Yes, sir.

THE JUDGE:               So there is a premium for a lot of reasons for
                         you to tell the truth and give substantial
                         cooperation.  Do you understand that?

THE WITNESS:             Yes, sir.

THE JUDGE:               If the government decides that the cooperation
                         is not substantial, do you understand that they
                         may refuse to file any one of these motions?

THE WITNESS:             Yes, sir.

THE JUDGE:               It's up to them totally and neither you nor
                         Judge Mickle can make them do it if they
                         decide that they don't believe that the
                         assistance has been substantial.  Do you
                         understand that?

THE WITNESS:             Yes, sir, I understand that.

THE JUDGE:               Is the government in a position to know yet
                         whether there will be a motion filed?

MR. SIMPSON:             No, Your Honor....

                                    * * *

THE JUDGE:               Okay.  So the important thing I must draw to
                         your attention is that it's uncertain whether the
                         government will file this motion, and if they
                         don't, then Judge Mickle has to give you a life
                         sentence.  Do you understand that?

THE WITNESS:             Yes, sir.


**No. 4:01cr47-spm/ak**

*Id.* at 24-32.

Defendant also agreed that he understand that the conduct alleged in the counts of the indictment which were being dismissed could be considered as relevant conduct at sentencing. *Id.* at 33. Finally, he stated that he thought his attorney had "done a good job." *Id.*

Subsequently, the Court accepted the guilty plea. Doc. 65. A few days before sentencing, the Government filed a motion concerning substantial assistance pursuant to 18 U.S.C. § 3553(e) to "relieve defendant from the statutory mandatory penalties and to leave him subject to the Sentencing Guidelines." Doc. 79. Without substantial assistance consideration, Defendant was facing a mandatory life sentence, as more previously explained. In particular, the Government noted Defendant's "readily admitted involvement in the offenses charged" and his testimony at Hall's trial. *Id.* at 2. The Government concluded:

> The government does not excuse or condone defendant's repeated and continual involvement in drug transactions. Defendant is a career offender, with nine prior sets of felony drug convictions, as well as two distinct convictions for possession of drug paraphernalia, and a conviction for resisting arrest with violence. Seven of the drug felony convictions were for distribution offenses or were based upon facts showing distribution....Defendant has 20 criminal history points, seven more than are required to establish a criminal history category VI. Defendant was in custody or under supervision for almost all of the fifteen years prior to his arrest in this case.
>
> The government would not have used defendant as a witness, nor filed this motion, if he had not cooperated immediately and consistently, if he had played a greater role in the offense, or if he would not still be facing substantial penalties. While this motion permits the Court to sentence below the otherwise mandatory life term, the government makes no recommendation that any particular sentence be imposed, or than any

leniency be granted.  This matter lies within the sound discretion of the Court.

*Id.* at 2-3.

On February 11, 2002, Defendant appeared for sentencing.  At that time, he

personally addressed the Court, stating:

> I did wrong.  I apologize to the court and the United States of America.  I did it.  I did it.  They told me not to do it.  I did it.  I only did it because I needed to pay my bills....
>
> * * *
>
> In a way I thank the agents for arresting me....
>
> I'm not saying all this to make an excuse....I know I got to pay–pay for it, and I'm guilty.  I'm going to pay for it by doing my time.  I apologize.  I just ask you not to give me too much I can't handle, so I can come back and have a shot at life....

Doc. 124 at 8-9.

After considering the matter, the Court sentenced Defendant to 262 months

imprisonment.  Docs. 82, 87, & 125.  In sentencing Defendant below the statutory

mandatory life sentence and at the low end of the Guidelines range, the Court found:

> [P]ursuant to the Sentencing Reform Act of 1984 and all amendments, it is the judgment of the court that you, Willie James Francis, are hereby sentenced to a term of imprisonment of 262 months.  This sentence is imposed at the bottom of the guidelines range and below the mandatory life sentence you were facing by statute because the government has filed a 3553(e) substantial assistance motion on your behalf.  Your cooperation was timely rendered, significant, and useful to the government in the prosecution and investigation of others.
>
> [P]rior to the filing of this motion, I would have been required to sentence you to life imprisonment.  The 262-month sentence I now impose is sufficient to provide just punishment to you for your criminal conduct and will serve as a general deterrent to others.

**No. 4:01cr47-spm/ak**

Doc. 124 at 10-11.  Defendant did not appeal his sentence.

The instant motion to vacate ensued.  On this occasion, Defendant raises one ground for relief: "Counsel ineffectively failed to move the court to have all pre-plea admissions and cooperation as plea related negotiations under Rule 11(e)(6).  Absent counsel's omission there is a reasonable probability that Movant's base offense level would be years shorter."  Doc. 118 at 5.  In his motion, Defendant admitted that a confidential informant made several separate purchases of crack cocaine from him and/or Brown and that the total "amount of drugs actually involved in sales to the C.I. when Francis participated was 65 grams of crack cocaine."  Doc. 118, Memorandum at 5.  Subsequently, he was arrested and Mirandized and then "agreed to cooperate with authorities."  *Id.*  He more specifically maintains that he informed counsel of the following:

> Leon County Sheriff Deputy Ed Cook read [Defendant] his rights.  After being read his rights Deputy Cook, DEA Agent Andris and FDLE Agent Kitt-Wood informed [Defendant] of the following....
>
> Christopher Brown is going to get a life sentence in prison, and he (Brown) had implicated [Defendant].  And because of [Defendant's] prior record he was a lifer also.
>
> The Officers informed [Defendant] that there was a way that he could help himself, and that was by cooperating with the investigation right now.  If [Defendant] refused to cooperate he will get life.  But, if [Defendant] wanted to help himself, he had better tell the officers everything he knew and had memory of doing with Christopher Brown and others.  Officers informed [Defendant] that everything he gives them will be used to put a good word in with the prosecutor.  The officers stated that his decision had to be made now and immediately, because later will be too late.
>
> [Defendant] asked Officers would it keep him from getting all of the time in prison that the officers were saying he would get if he cooperated.  Officers responded that they could make no promises about how much

**No. 4:01cr47-spm/ak**

> time [Defendant] would get, but it will not be that much, but it was
> [Defendant's] life it was his gamble to take, life or less than life.  (These
> conversations began in the van enroute to Sheriff Headquarters).
>
> It was the above discussions that convinced [Defendant] to cooperate to
> get a lesser sentence upon conviction.

*Id.* at 7-8.  Defendant then asserts that if counsel had informed the Court that Defendant

believed there was "an understanding or a prediction" regarding his sentence, then the

Court "would have been compelled to evaluate the admissibility of pre-plea admissions."

*Id.* at 9.  According to Defendant, he asked counsel "during a visit why was he being

held accountable for the very same conduct that he was told would be used to help

him," *id.* at 9 n.1, because he was "under the impression that the only drugs that he

would be sentenced for was the drugs actually sold by himself to the C.I. and not the

cooperation styled admissions at Sheriff's Headquarters."  *Id.*  Defendant maintains that

counsel "became very upset and intimidated [Defendant] by making it clear by stating

that he would get life if he pissed counsel the hell off."  *Id.*     In Defendant's view, he

was prejudiced by counsel's failure "because his guideline sentence was increased by

two levels when the court calculated the pre-plea admissions into his attributable

relevant conduct."  *Id.* at 11.  In Defendant's view, without his cooperation, the

Government would only have known about "the 65 grams of crack cocaine that

[Defendant] had participated in selling to the C.I."  *Id.*  However, based on information

divulged during cooperation, he "admitted an additional 300 grams of crack cocaine."  In

short, his base offense level should have been 29 after credit for acceptance of

responsibility.  *Id.*

There is no dispute that this motion is timely.

**No. 4:01cr47-spm/ak**

Approximately nine months after the Government responded to the original motion, Defendant filed an "Amended 2255 Pursuant to Civil Rule 15," which, because the Government had already filed a response, the Court interpreted as a motion for leave to amend. Doc. 141. *See* Fed. R. Civ. P. 15(a) (after responsive pleading is filed, party may amend only with leave of court). In his proposed amendment, Defendant maintains that his counsel was ineffective as follows:

> [Defendant's] statements made to officers were not admissible because they were given under the promise that all cooperation would be used to benefit [Defendant] to escape a life sentence. Statements induced by promise are not admissible. Exclusive of inadmissible statements [his] sentence would be less.

Doc. 141 at 5. This proposed amendment, which was filed on April 2, 2004, was filed after the one-year statute of limitations had expired.

## DISCUSSION

The first question which must be addressed is whether the Court should consider the proposed amendment since it was filed well after the expiration of the one-year statute of limitations for seeking § 2255 relief. Because the proposed claim of ineffective assistance of counsel is facially untimely, it is barred unless it "relates back" to the original filing pursuant to Fed. R. Civ. P. 15(c). *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). The new claim "will relate back and be considered timely if [it] 'arose out of the conduct, transaction, or occurrence' set forth in his original § 2255 motion." *Davenport*, 217 F.3d at 1344. For relation back to apply, the untimely claim must "have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceeding." *Id*. Rather, the untimely

**No. 4:01cr47-spm/ak**

claim "must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" *Id.* Rule 15(c) is not "so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts." *Pruitt v. United States*, 274 F.3d 1315, 1318 (11th Cir. 2001). Thus, while the rule "contemplates that parties may correct technical deficiencies or expand facts alleged in the original pleading, it does not permit an entirely different transaction to be alleged by amendment." *Pruitt*, 274 F.3d at 1318.

Having carefully considered the matter, the Court finds that consideration of the amendment is appropriate, as both the initial claim and the proposed claim involve counsel's alleged ineffectiveness for failing to act with regard to certain pre-plea admissions made by Defendant to law enforcement officers. Thus, the motion to amend is well taken, and the Court will consider the claim set forth in the motion to amend. Though the Court would usually require Defendant to file an amended § 2255 motion which incorporates all facts and issues to be decided, the Court will make an exception on this occasion and consider the facts as alleged in the original motion since Defendant did not include any new factual basis for the amended claim. With that said, the Court turns to a consideration of the amended ineffective assistance of counsel claim.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The Court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the

**No. 4:01cr47-spm/ak**

prejudice prong.  *Id.* at 697.  The Court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice.  *Id.*

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  The Court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance.  *Strickland*, 466 U.S. at 689-90.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment."  *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome."  *Id.*  Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable.  *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

**No. 4:01cr47-spm/ak**

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

In this case, counsel did not act ineffectively for failing to seek exclusion of various admissions Defendant made to law enforcement officers during the course of their investigation. These were not pre-plea negotiations pursuant to Fed. R. Crim. P. 11 or Fed. R. Evid. 410, as Defendant has made no allegation that the United States Attorney participated in any of these meetings. *See United States v. Jones*, 32 F.3d 1512, 1517 (11th Cir. 1994) (rule precluding admission of pre-plea negotiations does not apply to statements made to law enforcement officers).

Furthermore, Defendant was, by his own admission, read his *Miranda* rights, and he voluntarily chose to begin his cooperation immediately. Despite Defendant's present representation that the officers told him he would not get "that much" time if he cooperated, he clearly told the Court under oath at the plea hearing that no promises were made to him by anyone regarding the sentence he might receive. The magistrate judge very carefully probed Defendant's understanding of the plea agreement, the impact of a possible motion for substantial assistance, and his agreement to the drug quantities in the Statement of Facts, and he plainly told the Court that he understood what he was doing and the ramifications of his actions.

**No. 4:01cr47-spm/ak**

The law is well established that a "guilty plea means something.  It is not an invitation to a continuing litigation dialogue between a criminal defendant and the court."

*Murray v. United States*, 145 F.3d 1249,  1254 (11th Cir. 1998).  In fact,

> the representations of the defendant, his lawyer, and the prosecutor at...a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*,  431 U.S. 63, 73-74 (1977). In the end, Defendant received the benefit of the deal he was hoping for when he began his cooperation in that he was not sentenced to a mandatory life sentence--a mandatory sentence which was based solely on his criminal history.  Counsel had no grounds under which to contest Defendant's incriminating statements to law enforcement.  Defendant was plainly Mirandized and there is no evidence, other than what Defendant says in hindsight, that would have led a reasonable competent attorney to suspect that his client's desire to plead guilty was anything less than voluntary and knowing.  Counsel cannot be ineffective for failing to lodge frivolous objections to matters which were part and parcel of the Plea and Cooperation Agreement and the supporting Statement of Facts.  During the course of the plea proceedings, Defendant had every opportunity to advise the Court that, based on representations made by law enforcement, he believed he would not get "that much" time, to dispute the drug computation in the Statement of Facts, and to complain about his attorney's performance with regard to both of these issues.  The Court was very careful in its handling of all of these issues during the plea dialogue, and Defendant has

**No. 4:01cr47-spm/ak**

offered nothing to relieve him of his sworn statements to the Court or to impugn the

representation he received.

**CONCLUSION**

In light of the foregoing, it is respectfully **RECOMMENDED:**

That Defendant's motion to amend, Doc. 141, be **GRANTED;**

That Defendant's motion to vacate, set aside, or correct sentence, Doc. 118,

along with the additional claim alleged in Doc. 141, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this **13th** day of October, 2005.


**s/ A. KORNBLUM**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 4:01cr47-spm/ak**